## Freck *versus* Blakiston.    Freck's Appeal.[1]

1. A., the partner of B., having charge of the firm's business at a particular place, employed a firm of which he was a member to conduct it for a commission ; the accounts rendered to B. showed that this was the course of dealing, and no objection was made, and the effect was to reduce the expense of transacting the business :  *Held,* that B. could not, after dissolution and settlement, demand an account of A.'s share of such commissions.

2. A. sold coal of his firm to another firm of which he was a member, with notice to his partner, and at the full market value :  *Held,* that he was not liable to account for profits received by him as partner in the purchasing firm, although said firm took the coal to fill contracts for delivery at a larger price than they paid for it.

February 13th 1877.   Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.  Williams, J., absent.

Appeal from the late Nisi Prius:  Of January Term 1868, No. 67.

This case was heard in the court below, on exceptions to a master's report.   The facts of the case were as follows :—

Blakiston and Freck became partners in 1864, in mining and selling coal, as J. M. Freck & Co.   Freck agreed to mine and ship the coal, and Blakiston agreed to sell the coal in Philadelphia. Blakiston was also a partner in the firm of Blakiston, Graeff & Co., coal merchants doing business in Philadelphia.

In 1866 the firm of J. M. Freck & Co. was dissolved.   Freck,

---

[1] The Reporter was kindly furnished with the report of this case by R. C. McMurtrie, Esq , of counsel for appellees.

[Freck *v.* Blakiston.]

who kept the books, sent down a balance-sheet, and by that, some months afterwards, in April 1867, a settlement was made, and the balance to the credit of Freck, deducting two uncollected items on the debit side, was paid him by Blakiston.

In 1868 Freck filed a bill for an account of the partnership. Blakiston pleaded an account stated. Freck then amended, claiming to surcharge and falsify the account stated: 1. For an amount received by Blakiston for commissions received by him as a partner in the firm of Blakiston, Graeff & Co., on sales of the coal of J. M. Freck & Co. 2. For sales of coal to the firm of Blakiston, Graeff & Co. at less than market prices. 3. For profits on coal delivered to Repplier, with whom Blakiston was a partner, to fill contracts with the government. 4. For profits on coal delivered to Wright under similar circumstances.

The case was referred to a master, who reported, in substance, on the first point, that the arrangement for conducting the business by Blakiston, Graeff & Co. for a commission, caused a great saving to the firm of J. M. Freck & Co.; that the mode in which the business was done was known to Freck; that monthly accounts-current and accounts-sales were rendered by Blakiston to Freck and were received by him, and his accounts in the firm's books were made out from them, and that no objection was made by Freck to this mode of doing business. But the master held, as matter of law, that, as the commissions were earned out of dealings with the property of J. M. Freck & Co., Blakiston must account for his share of those commissions.

As to the second point, the master found that the sale of the coal of J. M. Freck & Co. was made at full market prices; that accounts-sales were rendered to Freck showing the names of the purchasers and the prices paid, and no objection was made by Freck. The master, however, reported that a point was made before him not taken in the pleadings, viz., that inasmuch as Blakiston was partner in the selling and buying firm, he must account to his selling partner for the profits he made as purchaser.

The master, however, reported that there was no right to have an account of profits made on sales by the purchasing firm which accrued to the common partner of both firms.

As to the third point, he reported that Repplier was the name in which government contracts had been taken by several persons and firms, among whom was Blakiston, Graeff & Co., J. R. Blakiston being one of that firm; that they did sell or deliver the coal of J. M. Freck & Co. to him, and he sold it to the government. But as it was proved that J. M. Freck & Co. received precisely the same price as the government paid Repplier, there was no ground for account.

Freck's counsel maintained that the coal thus used was to be treated as a contribution of capital, and thus he was entitled to the

[Freck *v.* Blakiston.]

*pro rata* share of the profits on that basis.    The evidence showed that the sales to Repplier were returned in the account-sales rendered Freck, and the proceeds carried into the accounts-current, and the balances accounted for between Blakiston and Freck.    And it was also proved that there was a contribution of capital with which Freck had nothing to do, and the profits were not made out of the sales of J. M. Freck's coal.

As to the 4th point, the circumstances were precisely the same as those under the 3d, except that Wright did receive a profit on the coal, and the master ruled that Blakiston must account for his share of that profit.

The master thereupon reported that there should be a decree for an account by the defendant of the amount received for his share of the commissions paid to Blakiston, Graeff & Co., and of the profit derived from the Wright contract.    He also reported that plaintiff should account to defendant for certain items which had been excluded from the settlement between them.

Both parties filed exceptions.    The plaintiff's exceptions were, *inter alia*, because the master did not direct an account of the profits received on the sales of coal purchased by Blakiston, Graeff & Co., and of the profits received under the Repplier contract.    After a hearing on the exceptions the Court of Nisi Prius entered the following decree: "December 30th 1874, the exceptions filed by the defendant sustained, and also the 14th exception filed by the plaintiff.    The other exceptions of the plaintiff are dismissed, and thereupon it is ordered and decreed that the bill be dismissed with costs." No opinion was filed.

Both plaintiff and defendant appealed, assigning for error the decree of the court.    Defendant's appeal was argued and decided in March 1876, and is reported 2 Weekly Notes 669.    The case now came on to be heard on the plaintiff's appeal.

*E. O. Parry* and *C. Stuart Patterson*, for appellant.—(1) The appellee's plea of "account stated" would be a bar to the appellant's prayers for a general accounting, if the plea had been proved. The master finds against the plea, though he treats it as a question of estoppel.    The decree of this court, and the opinion of WOODWARD, J., in Freck *v.* Blakiston (2 Weekly Notes 669), shows that the account stated does not bind the appellee in this case.    How then can it bind the appellant?    The account stated is, in terms, a settlement not of firm business, but of a mortgage, and the balance-sheet therein referred to had been repudiated by the appellee as a final statement of firm transactions.    The plea not being proven, the appellant is entitled to a reversal of the decree below, and to a decree for a general accounting.

(2) If the plea were proven, the appellant would be entitled to

[Freck *v.* Blakiston.]

"surcharge and falsify," and this he has done by his amended bill in three particulars, viz. :—

(*a*) As to the commissions on sales of coal. The firm articles bound the appellant "to superintend the working of the colliery," and the appellee "to sell or dispose of the product thereof." Neither partner contributed any money as capital, but the appellee loaned to the firm the money which constituted its cash capital, and that loan has been repaid with interest. The articles also provided that the firm profits should be equally divided. As the equivalent for his share in the profits, the appellee was bound to sell the coal. Instead of doing that, he employed his other firm of Blakiston, Graeff & Co. to perform that duty, and he compelled J. M. Freck & Co. to pay that firm three per cent. commissions on the sales, and two and a half per cent. guarantee commission. The guarantee commission is, in any possible view, unauthorized, for the articles obviously imply that the business experience and skill of the appellee should be so applied as to make sales to paying customers, and that the firm should be its own insurers as against bad debts. Nor is there better warrant for the commission on sales. The appellee was entitled to charge office rent, clerks' salaries, &c., if he sold the coal; but he had no right to wholly neglect to perform the one duty imposed on him by the articles, and then to charge the firm with the cost of having his duty performed by Blakiston, Graeff & Co., part of which cost went into his own pockets as a partner in the the latter firm.

Selling through Blakiston, Graeff & Co. did not really save money to J. M. Freck & Co., for all the estimates relied on by the appellee include salaries for that service, as compensation for which the appellee received one-half the firm profits.

The appellee risked no capital, rendered no service to the firm and received one-half of its profits, and, also, as partner of Blakiston, Graeff & Co. part of their profits on business done for J. M. Freck & Co.

(*b*) As to the sales by the appellee of J. M. Freck & Co.'s coal to Blakiston, Graeff & Co. at less than the "current market price of the day."

(The testimony was commented on in detail to show that "the current market price" meant not the buying price of coal at Port Richmond, but the selling price; that the sales in question were made by the appellee at the former price when they should, in fairness to the appellant, have been made at the latter price; that the appellant never acquiesced in the commission or the sales to Blakiston, Graeff & Co.)

(*c*) As to the application by the appellee of the firm coal to the uses of the government contracts, in which the appellee was interested.

(The letters of the appellee and the testimony were referred to,

[*Freck v.* Blakiston.]

to show that the appellee participated in the contracts on behalf of
J. M. Freck & Co., and that that firm was entitled to share in their
profits.)

Bast's Appeal, 20 P. F. Smith 301, is decisive in favor of appel-
lant. That case holds, with regard to one of the very contracts in
question here, that "there is an implied obligation among partners
that their property shall be used for the benefit of the firm;" and
that an interest in a government coal contract, though taken by a
partner, and intended by him for his individual benefit, must be held
to enure to the benefit of his firm.

*Paul* and *McMurtrie*, for appellees.—(1) It is not disputed that
all profits earned from firm business must be accounted for. Nor is
it pretended that the account stated precludes an inquiry into that.
But this was a substitution of the agreed mode of doing the busi-
ness. It was the hiring of the firm of Blakiston, Graeff & Co.,
who were paid a commission in lieu of the expense. If the share
of these must be accounted for, Blakiston, who paid his share of
the expense, while Freck paid nothing, must be allowed that. And
the question is, can Freck, after acquiescing in this mode of doing
the business, require such an account? His conduct shows he
agreed to the substituted mode of performance: Jackson *v.* Sedg-
wick, 1 Swanston 460–9; Boyd *v.* Mynatt, 4 Ala. 79; Stoughton
*v.* Lynch, 1 Johns. Ch. 470.

It would be as proper to charge him for interest received on loans
to the firm: Chippendale *v.* German Mining Co., 4 DeG., McN.
& G., 19–36.

(2) The claim, as made by the bill, lacks the facts to sustain it.
The claim now made is, that a common partner must account for
profits on goods bought, because *they are firm property.* The vice
of the argument lies in that statement, whereas by the purchase
they ceased to be firm property of the sellers. That a partner may
be also partner in another firm no one can doubt: Glassington *v.*
Thwaites, 1 Sim. & Stu. 124.

And transactions between firms having a common partner are
treated in every respect as if the firms were composed of strangers,
except as to the effect of notice: 1 Lind. on Part. 675; Bolton *v.*
Puller, 1 Bos. & Pul. 546; Philips *v.* Crammond, 2 Wash. C. C.
446; Collamer *v.* Foster, 26 Verm. 759; Reno *v.* Crane, 2 Blackf.
218; Parrish *v.* Lewis, 1 Freem. Ch. 309; Coffee *v.* Brian, 3 Bing.
55; Jackson *v.* Stopherd, 2 Cr. & Mees. 366.

The rule governing transactions between trustee and *cestui que
trust,* that the purchaser must prove fairness, does not prevail:
Chambers *v.* Howell, 11 Beav. 13.

So where it is between corporation and director: Gordon *v.* Pres-
ton, 1 Watts 385.

And the rules as to the evidence that proves the sale, and the

[Freck v. Blakiston.]

exigency of pleading to sustain an account, prove the rule: Collamer v. Foster, 26 Verm. 759; Kelley v. Greenleaf, 3 Story 101; Herrick v. Ames, 8 Bosworth 118; Levi v. Karrick, 13 Iowa 353; Reno v. Crane, 2 Blackf. 218; Perry v. Butt, 14 Ga. 708–9; Foster v. Andrews, 2 Penna. 161.

(3) There were no profits under the Repplier contract from the sale of the coal of J. M. Freck & Co., and the claim to a partner's profits derived in another firm, has not even a pretence that can be argued, unless it be law that being partner in one business draws to it all other business of all the partners.

(4) The master thought this point was ruled by Bast v. Pearson. The ground of that decision was that the defendant sold his firm's coal, and claimed the right to keep all the profits. Here all the profits on the sale were accounted for. If the profits on the sale by the purchaser must be accounted for, the rule must be that firms having common partners can never deal with each other. And really it comes to this, that firm property can never become separate property of one of the partners. The absurdity of this argument was exposed in Ex parte Ruffin, 6 Vesey 119, 127, 128, where it is said, if that were law a firm could never wind up, for that was only done by giving each a separate ownership in part of the common property. The rule, however, is well settled: Ex parte Williams, 11 Vesey 3; Ex parte Fell, 10 Id. 347; Campbell v. Mullett, 2 Swanst. 570; Ex parte Peake, 1 Madd. 358, and the cases cited under the second point.

The plaintiff does not even aver that the sales were secret; and that he was informed of them by the monthly accounts is not disputed in the evidence.

The judgment of the Supreme Court was entered, March 5th 1877,

PER CURIAM.—After a careful examination of this case we have not been able to discover any substantial error in the decree made at Nisi Prius.

> Decree affirmed, with costs to be paid by the appellant, and the appeal dismissed.